**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| NORMA VARGAS, | : | |
| | : | |
| Plaintiff, | : | Civil No. 21-19077 (RBK) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the appeal filed by Plaintiff Norma Vargas from the decision of the Acting Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff disability insurance benefits and supplemental security income. For the reasons set forth below, the Commissioner's decision is **VACATED** and **REMANDED**.

## I.    PROCEDURAL HISTORY

On July 30, 2018, Plaintiff filed applications with the Social Security Administration for disability insurance benefits and supplemental security income, alleging that she became disabled on January 2, 2018. (R. at 445–52).  The claims were denied initially on December 21, 2018, and on Reconsideration on April 3, 2019. (R. at 24). On April 16, 2019, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*). Represented by counsel, Plaintiff appeared before ALJ John Campbell on May 7, 2021, at a telephonic hearing. (*Id.*). On May 21, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act. (R. at 42.). Plaintiff appealed the ALJ's decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review on September 9, 2021. (R. at 1–4). On October 20, 2021, Plaintiff appealed the matter to this Court. (ECF No. 1).

## II.   LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period.  20 C.F.R. § 404.1572. Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that she cannot perform her past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish

that other available work exists that the claimant can perform based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

This Court reviews the ALJ's application of the law under a de novo standard and the ALJ's factual findings under a "substantial evidence" standard. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007) (citing 42 U.S.C. 405(g); *Williams v. Sullivan*, 970 F.3d 1178, 1182 (3d Cir. 1992); and *Mounsour Med. CR. v. Heckler*, 806 F.3d 1185, 1191 (3d Cir. 1986)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 972 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing

*Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.   FACTUAL BACKGROUND

### A.  Plaintiff's History

Plaintiff was born on February 3, 1968. (R. at 445). She completed the eleventh or twelfth grade. (R. at 92, 704, 722). She previously worked as a packing machine operator (R. at 92). Plaintiff alleges her disability onset on January 2, 2018, the day when, according to Plaintiff, her boyfriend attempted to take her life, first by intentionally crashing an automobile in which she was a passenger, then by choking Plaintiff until she became unconscious. (ECF No. 12 at 5 ("P. Brief"); R. at 1116 ("My boyfriend tried to kill himself and I in a car accident. I don't remember details after he left me unconscious by holding me by the neck.")). Plaintiff suffered severe injuries from the car accident, had to be resuscitated at the scene of the crash, and was then admitted to an intensive care unit. (P. Brief at 5–6; R. at 727, 731). Her evaluating physician, Dr. William J. Lick, described Plaintiff upon admission to the hospital as "critically ill with a high probability of imminent or life threatening deterioration." (R. at 739). She was discharged on January 6, 2018. (R. at 771). On March 10, 2019, Plaintiff was involved in a second motor vehicle accident, in which she sustained further physical injuries. (R. at 1160).

### B.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, January 2, 2018. (R. at 26). At step two, the ALJ found that Plaintiff had the following severe mental impairments[1]: major depressive disorder (MDD); anxiety; and

---

[1] Because Plaintiff does not appeal the ALJ's findings as to her physical impairments, we do not discuss them here.

4

post-traumatic stress disorder (PTSD). (R. at 26–27). The ALJ found that these medically determinable impairments significantly limited Plaintiff's ability to perform work activities. (R. at 27). At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. at 27). Relevant here, the ALJ explained that "[i]n interacting with others, the claimant has a moderate limitation" (R. at 28) and "[w]ith regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation" (R. at 29).

At step four, the ALJ constructed Plaintiff's residual functional capacity (RFC). The ALJ found that "[t]he claimant can carry out simple instructions, make simple decisions in the workplace, perform simple routine and repetitive tasks, and occasionally adjust to changes in the workplace routines. The claimant can maintain contact frequently with supervisors. The claimant can occasionally maintain contact with coworkers and the public." (R. at 30). The ALJ explained that, in regard to Plaintiff's allegations of disability due to mental problems, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 30).

In addition to considering the medical evidence in determining Plaintiff's RFC, the ALJ also considered "the claimant's statements, statements or other information provided by their medical sources or other third parties, and any other relevant evidence in the record." (R. at 39). This other evidence included Plaintiff's statements that she "fears sleeping and suffers panic attacks," "has memory problems," "cannot go out alone because she is afraid and experiences panic attacks," "loses concentration," "only spends time with others when she goes to church with her family" but that "she can shop in stores for food, medicine, and clothes," "is not good at following written or spoken instructions," "suffers from fatigue," and "has nightmares when she

5

sleeps." (R. at 39). The ALJ found that these statements "cannot be found fully consistent with the evidence," citing as contradictory "the claimant's treatment notes generally noting cooperative behavior, goal directed thought processes, normal thought content, normal cognition, normal alertness, normal speech, normal perception, and fair to good insight and judgment"; "Dr. Lago reporting such findings as coherent and logical speech, normal thought content, okay mood, full affect, intact cognition, intact orientation, ability to follow commands and instructions, attentiveness, ability to perform math, ability to perform serial 3s, and intact short-term, intermediate, and long-term memory"; and "the claimant's general ability to perform activities of daily living and complete tasks." (R. at 39–40).

The ALJ also found that statements from Plaintiff's brother, Iram De Jesus, were not fully consistent with the record for the same reasons. (R. at 40). De Jesus stated that "the claimant forgets things"; "the claimant cannot go out alone and experiences panic attacks"; "the claimant can shop for medicine and food, pay bills, count change, and use a checkbook"; "the claimant feels afraid at times"; "the claimant only goes to church on a regular basis but needs someone to accompany her"; "the claimant cannot pay attention for a long time"; and "the claimant is uncomfortable with changes in routine." (*Id.*).

After constructing the RFC, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. at 40). At step five, based on the above analysis and the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy and that Plaintiff can perform based on her age, RFC, education, and work experience, such as marking clerk, routing clerk, and order caller. (R. at 41). Accordingly, the ALJ concluded that Plaintiff was not disabled at any time between her alleged disability onset date and the date of the ALJ's decision.

## IV.   DISCUSSION

Plaintiff brings two step four challenges.[2] First, she argues that the ALJ did not provide a legally sufficient explanation for finding that Plaintiff is capable of performing simple tasks, because the ALJ failed to make a finding as to whether Plaintiff can sustain attention and concentration for two-hour intervals. Second, Plaintiff argues the ALJ did not sufficiently consider Plaintiff's PTSD symptoms in concluding that Plaintiff could have frequent contact with supervisors and occasional contact with coworkers and the general public.

### A.  Simple Tasks Limitation

Plaintiff argues the ALJ's RFC assessment was legally insufficient because the ALJ determined, at step three, that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace, but the RFC's "simple tasks" limitation did not adequately account for this moderate limitation. (P. Brief at 11). Plaintiff takes issue with the ALJ's failure to make a finding as to whether Plaintiff could sustain attention and concentration for two-hour intervals, which Plaintiff argues is necessary in order for the ALJ to find that Plaintiff is capable of performing simple tasks. (P. Brief at 12). Plaintiff argues that the ALJ's failure to determine whether Plaintiff could sustain attention and concentration for two-hour intervals renders the RFC insufficient under the Third Circuit's decisions in *Hess v. Commissioner of Social Security*, 931 F.3d 198 (2019), and *Ramirez v. Barnhart*, 372 F.3d 546 (2004).

In *Ramirez*, the Third Circuit held that an RFC including a limitation to "one to two step tasks" was insufficient when the ALJ had found that the claimant "'often' has 'deficiencies in

---

[2] "[T]he Third Circuit has explained that 'objections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself.'" *Bruce v. Berryhill*, 294 F. Supp. 3d 346, 357 (E.D. Pa. 2018) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 n.8 (3d Cir. 2005)). Such is this case here and, accordingly, we treat Plaintiff's argument regarding the ALJ's hypothetical questions as a challenge to the RFC assessment.

concentration, persistence or pace.'" 372 F.3d at 554. The court explained that the limitation was

insufficient because it failed to take into consideration deficiencies in pace: "Many employers

require a certain output level from their employees over a given amount of time, and an individual

with deficiencies in pace might be able to perform simple tasks, but not over an extended period

of time." *Id.* Because the ALJ's simple tasks limitation did not "adequately convey" the claimant's

limitations of pace, *id.* at 552 n.2, the court held that the decision was not supported by substantial

evidence. *Id.* at 552.

In *Hess*, the issue before the court was whether the ALJ's limitation of Hess "to jobs

requiring understanding, remembering, and carrying out only simple instructions and making only

simple work-related decisions" was permissible in light of the ALJ's finding, at step three, of

moderate difficulties in concentration, persistence or pace. 931 F.3d at 208. The Third Circuit held

that, in accordance with *Ramirez*, a simple tasks limitation is acceptable after finding limitations

in concentration, persistence, or pace, "as long as the ALJ offers a valid explanation for it." The

Third Circuit then determined that the ALJ had offered a valid explanation because "the ALJ

explained at length and with sound reasoning why Hess's 'moderate' difficulties in 'concentration,

persistence, or pace' were not so significant that Hess was incapable of performing 'simple tasks.'"

*Id.* at 213. For example, to support the "simple tasks" limitation in the RFC, the ALJ had explained

that:

> Hess's "self-reported activities of daily living, such as doing laundry, taking care
> of his personal needs, shopping, working, and paying bills (when he has money), []
> are consistent with an individual who is able to perform simple, routine tasks." []
> In the same discussion, the ALJ also observed that "progress notes from treating
> and examining sources generally indicate no serious problems in this area of
> functioning, reporting that [Hess] could perform simple calculations, was fully
> oriented, and had intact remote/recent memory."

*Id.* at 214. The Third Circuit held this explanation was valid because it reflected the Social Security

Administration's Program Operations Manual System (POMS) description of a simple tasks

limitation, which requires "the ability to maintain concentration and attention for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)[;] [t]he ability to perform activities within a schedule ... [;] [t]he ability to sustain an ordinary routine without special supervision[;] ... [and] [t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.* at 212–13 (quoting POMS DI 25020.010(B)(2)(a))).

The issue before this Court is whether, under *Ramirez* and *Hess*, the ALJ provided a valid explanation for concluding that the simple task limitation adequately conveys Plaintiff's limitations in concentration, persistence, or pace. Plaintiff urges that the RFC did not adequately convey Plaintiff's limitations because it did not take into account Plaintiff's pace limitations, as supported by evidence that Plaintiff is unable to work for two-hour segments, which is a basic requirement for the performance of simple tasks according to POMS.

We agree with Plaintiff that the ALJ did not meet the standards set in *Ramirez* and *Hess*. We found no discussion in step four explaining the ALJ's reasoning for why the simple tasks limitation is sufficient to address Plaintiff's concentration, persistence, or pace limitations. Instead, the ALJ provided only one broad, single-sentence explanation for how the RFC reflects all of Plaintiff's symptoms relating to her mental impairments:

> Regarding the claimant's mental problems, mental status examinations generally noting cooperative behavior, goal directed thought processes, normal thought content, normal cognition, normal alertness, normal speech, normal perception, and fair to good insight and judgment . . . and the claimant's general ability to perform activities of daily living and complete tasks . . . support the finding the claimant can perform work at the RFC.

(R. at 34). This vague explanation does not meet the standard set forth in *Hess*, which held the "valid explanation" requirement was met where the ALJ explained "at length and with sound

9

reasoning why [the claimant]'s 'moderate' difficulties in 'concentration, persistence, or pace' were not so significant that [the claimant] was incapable of performing 'simple tasks.'" 931 F.3d at 213. Because the ALJ in this case did not provide a valid explanation that meets the requirements set by *Ramirez* and *Hess*, we do not know what evidence the ALJ relied on to conclude the simple tasks limitation was sufficient and we are unable to determine whether Plaintiff is correct that the ALJ did not consider her pace limitations.

The ALJ's decision did not provide a valid explanation for how the RFC's "simple tasks" limitation adequately conveys the Plaintiff's moderate limitation in concentration, persistence, or maintaining pace. Therefore, we conclude that the simple tasks limitation was not based on substantial evidence and we remand on this issue.

### B.  PTSD Symptoms

The ALJ found, at step two, that Plaintiff's PTSD constituted a severe impairment. (R. at 26–27). At step three, the ALJ found that Plaintiff has moderate limitations in "interacting with others," citing her PTSD and other mental health diagnoses as evidence. (R. at 28). In relation to these findings, the RFC includes the limitations that "[t]he claimant can maintain contact frequently with supervisors" and "can occasionally maintain contact with coworkers and the public." (R. at 30). These RFC limitations may not be set aside so long as they are supported by substantial evidence. We must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 972 F.Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Plaintiff argues the RFC analysis did not provide a legally sufficient evaluation of Plaintiff's symptoms stemming from her PTSD because the ALJ did not consider Plaintiff's statements that she could not be among "many people" and she wanted to "be alone." (R. at 515).

The ALJ rejected these statements as inconsistent with the evidence on the record, citing doctors' treatment notes describing cooperative behavior. [3] (R. at 39). The ALJ did not explain his reasoning as to why Plaintiff's statements are inconsistent with the treatment notes, and we are not convinced that Plaintiff's ability to interact with medical doctors in the course of receiving treatment has any bearing on Plaintiff's ability to interact with supervisors, coworkers, or the general public. *See Paula R. v. Comm'r of Soc. Sec.*, 2022 WL 950242 at *8 (D.N.J. Mar. 30, 2022) ("The fact that Plaintiff was 'cooperative' with medical providers during appointments . . . does not necessarily demonstrate that Plaintiff can adequately and routinely interact with supervisors and co-workers at a full-time job.").

We conclude that the ALJ did not take into account the entire record in constructing limitations for interacting with others. *See Schonewolf*, 972 F.Supp. at 284–85. We remand on this issue.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for benefits is **VACATED** and **REMANDED** for further administrative proceedings consistent with this Opinion. An Order follows.

Dated: 12/23/2022                          /s/ Robert B. Kugler
                                           ROBERT B. KUGLER
                                           United States District Judge

---

[3] The Court notes that Plaintiff made several more statements supporting her inability to regularly interact with others, including that she only goes outside "when [it] is necessary"; she spends time with others "only when [it] is necessary with [her] family"; and "[she] want[s] to be alone, [she] feel[s] afraid, [she] can't be with other people." (R. at 567–74). Likewise, De Jesus' statements provide further support for Plaintiff's assertion that she cannot be around other people unless accompanied by family. (R. at 40). All of these statements were found to be unpersuasive because inconsistent with treatment notes stating that Plaintiff was "cooperative" with her doctors.